UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LUIS BARRAZA LAGUNA, *et al.*,

      Petitioners,

  v.

JULIO HERNANDEZ, *et al.*,

      Respondents.

CASE NO. 2:26-cv-00864-GJL

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioners Luis Barraza Laguna, Sefik Canalp, Yauheni Dauzhanok, Maria Garza Gomez, Jesus Gomez Gonzalez, Yhon Rojas Portilla, and Roosevelt Tebid (collectively "Petitioners") are currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 at ¶ 1. On March 13, 2026, Petitioners, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and injunctive relief. *Id.*

Respondents to the Petition include Julio Hernandez (Acting Field Office Director for ICE's Seattle Field Office), Bruce Scott (Warden of the NWIPC), U.S. Department of Homeland Security ("DHS"), Markwayne Mullin (DHS Secretary), and Todd Blanche (Acting U.S.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

Attorney General) (collectively "Respondents").[1] The Petition has been fully briefed. Dkts. 1, 13, 14. The parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 11.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition and **ORDERS** the Petitioners' immediate release and injunctive relief as outlined in the conclusion.

## I. BACKGROUND

To begin, Respondents do not provide an independent factual narrative in their Return and, instead, refer the Court to certain declarations "for Petitioners' factual background." Dkt. 13 at 3. In footnotes, Respondents represent that these declarations are not offered "as exhibits." *Id.* at 3 n. 4. The Court therefore understands Respondents to rely on the declarations only for background context, not as evidence.

However, Respondents further represent that none of the Petitioners' A-files were available for review prior to filing the Return. *Id.* at 3 n. 3. In light of that representation, the Court is unable to determine how Respondents' counsel could have verified the accuracy of the factual assertions contained in the declarations. The Court has previously advised Respondents of their "solemn obligation to ensure that their factual representations to the Court are accurate and adequately supported by the record." *Caisa Telenchana v. Hermosillo.*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *1 n. 1 (W.D. Wash. Mar. 12, 2026); *see also* Fed. R. Civ. P. 11(b).[2]

---

[1] Respondents Mullin and Blanche have been substituted for the previously named Respondents Kristi Noem and Pamela Bondi, respectively.

[2] The obligation for counsel to perform a reasonable inquiry into factual matters extend to those presented to the Court via "pleading, written motion, or *other paper—whether by signing, filing, submitting, or later advocating it.*" Fed. R. Civ. P. 11(b) (emphasis added). Respondents and their counsel must remain mindful that their factual representations submitted to the Court must be supported by a reasonable inquiry into the underlying facts. *Id.* Repeated failure to comply with these obligations may result in further Court action.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

Under these circumstances, the Court concludes that Respondents have submitted no supported factual representations or competent evidence for the Court's review. In the absence of factual and evidentiary submissions from Respondents, the Court adopts, in full, Petitioners' undisputed factual allegations and evidence for the purposes of these proceedings.

The particular facts for each Petitioner are addressed below. The undisputed facts common to all Petitioners are these: Petitioners Luis Barraza Laguna, Sefik Canalp, Yauheni Dauzhanok, Maria Garza Gomez, Jesus Gomez Gonzalez, Yhon Rojas Portilla, and Roosevelt Tebid are noncitizens who were previously detained and released from immigration custody. With the exception of Petitioner Tebid, who was released on humanitarian parole, all Petitioners were released on their own recognizance ("OREC").

After living months or years in the United States while complying with conditions of release and pursuing immigration relief, Petitioners were re-detained by immigration officials without prior written notice, without an opportunity to be heard, and without individualized determinations regarding their flight risk or danger to the community.

**A.      Petitioner Luis Barraza Laguna**

Petitioner Luis Barraza Laguna, a citizen of Peru, entered the United States with his family in May 2022 seeking asylum. Dkt. 1 at ¶ 30; Dkt. 2 at ¶¶ 1–2. He was briefly detained and released on parole with instructions to report to immigration authorities. *Id.* Petitioner later relocated to Seattle, Washington, where he reported as instructed and was placed in removal proceedings. Dkt. 1 at ¶¶ 31–32; Dkt. 2 at ¶¶ 3–4.

Petitioner filed an asylum application, which was denied in December 2022, and he timely appealed. Dkt. 1 at ¶ 35; Dkt. 2 at ¶¶ 10, 12. While his appeal was pending, he lived and worked in Washington and continued reporting to immigration authorities without being advised

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

of any noncompliance. Dkt. 1 at ¶¶ 33–36; Dkt. 2 at ¶¶ 5–9, 11. He has no criminal history. Dkt. 1 at ¶ 38; Dkt. 2 at ¶ 11.

On December 23, 2025, Petitioner reported for a scheduled appointment and was abruptly re-detained. Dkt. 1 at ¶ 37; Dkt. 2 at ¶ 12. He was subsequently transferred to NWIPC, where he remains detained. *Id*. The record reflects that Petitioner received no written notice, no individualized assessment, and no opportunity to be heard prior to his re-detention. Dkt. 1 at ¶¶ 39–41.

**B.      Petitioner Sefik Canalp**

Petitioner Sefik Canalp, a citizen of Turkey, entered the United States on December 25, 2022, seeking asylum after fleeing persecution based on his sexual orientation. Dkt. 1 at ¶ 42; Dkt. 3 at ¶¶ 1–2. He was briefly detained by immigration officials and released in January 2023. *Id*.

Following his initial release, Petitioner resided in Illinois, California, and later Oregon, where he pursued his asylum claim, obtained work authorization, and remained in contact with immigration officials. Dkt. 1 at ¶¶ 43–47; Dkt. 3 at ¶¶ 3–5. A criminal charge was brought against Petitioner in 2023, but was later dismissed, and Petitioner completed a diversion program related to a DUI charge in 2025. Dkt. 1 at ¶¶ 44, 48; Dkt. 3 at ¶¶ 6–7.

In December 2025, ICE officers abruptly arrested Petitioner at his residence and provided unclear explanations for his re-detention. Dkt. 1 at ¶ 50; Dkt. 3 at ¶¶ 8–9. He was then transferred to NWIPC, where he remains detained. Dkt. 1 at ¶ 51; Dkt. 3 at ¶ 10. The record reflects that Petitioner received no written notice, no individualized assessment, and no opportunity to be heard prior to his re-detention. Dkt. 1 at ¶¶ 53–55.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

## C.   Petitioner Yauheni Dauzhanok

Petitioner Yauheni Dauzhanok, a citizen of Belarus, entered the United States with his wife and child in March 2024 after fleeing alleged torture by government officials. Dkt. 1 at ¶ 56; Dkt. 4 at ¶¶ 1–2. He was briefly detained by immigration officials and released shortly thereafter. Dkt. 1 at ¶ 56; Dkt. 4 at ¶ 3.

Petitioner settled in Washington, where he reported to immigration officials, filed an asylum application, obtained work authorization, and supported his family while awaiting immigration proceedings. Dkt. 1 at ¶¶ 57–58, 63; Dkt. 4 at ¶¶ 4–7, 17. Aside from a brief arrest resulting in no charges or conviction, Petitioner has no criminal history. Dkt. 4 at ¶¶ 8, 16.

In January 2026, after reporting to ICE as instructed, Petitioner was abruptly taken into custody without a clear explanation for his re-detention. Dkt. 1 at ¶¶ 60–61; Dkt. 4 at ¶¶ 10–13. He was transferred to NWIPC, where he remains detained. Dkt. 1 at ¶ 62; Dkt. 4 at ¶ 14. The record reflects that Petitioner received no written notice, no individualized assessment, and no opportunity to be heard prior to his re-detention. Dkt. 1 at ¶¶ 65–67.

## D.   Petitioner Maria Garza Gomez

Petitioner Maria Garza Gomez, a citizen of Mexico, entered the United States with her children after her husband was allegedly killed by cartel operatives. Dkt. 1 at ¶ 68; Dkt. 5 at ¶¶ 1–3. She was briefly detained by immigration officials and released pending removal proceedings. *Id.*

Petitioner filed an asylum application in 2018 and has remained in proceedings since that time, with multiple continuances. Dkt. 1 at ¶ 69; Dkt. 5 at ¶¶ 3–4. She obtained work authorization, later relocated to Oregon, and supported her four children as their sole provider. Dkt. 1 at ¶¶ 70–73; Dkt. 5 at ¶¶ 4–6, 8–9. She has no criminal history. Dkt. 1 at ¶ 73; Dkt. 5 at ¶

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

8. Petitioner's asylum application was denied in January 2026, and she has filed an appeal. Dkt. 1 at ¶ 76; Dkt. 5 at ¶ 10.

On December 5, 2025, ICE officers abruptly arrested Petitioner at her workplace. Dkt. 1 at ¶¶ 74–75; Dkt. 5 at ¶ 6. She was subsequently transferred to NWIPC, where she remains detained. Dkt. 1 at ¶ 75; Dkt. 5 at ¶¶ 7, 9. The record reflects that Petitioner received no written notice, no individualized assessment, and no opportunity to be heard prior to her re-detention. Dkt. 1 at ¶¶ 78–80.

**E.    Petitioner Jesus Gomez Gonzalez**

Petitioner Jesus Gomez Gonzalez, a citizen of Mexico, entered the United States with his family in August 2023 after fleeing cartel threats. Dkt. 1 at ¶ 81; Dkt. 6 at ¶¶ 1–3. After a brief detention, he was released by immigration officials and placed in removal proceedings. *Id.*

Petitioner filed an asylum application, obtained work authorization, and lived with and supported his four children while awaiting immigration proceedings. Dkt. 1 at ¶ 83; Dkt. 6 at ¶ 3, 6, 9.

In January 2026, Petitioner reported to ICE as instructed and was abruptly re-detained without a meaningful opportunity to dispute the reasons given by arresting officials. Dkt. 1 at ¶ 85; Dkt. 6 at ¶¶ 7–8. He was then transferred to NWIPC, where he remains detained. Dkt. 1 at ¶ 86; Dkt. 6 at ¶ 8. The record reflects that Petitioner received no written notice, no individualized assessment, and no opportunity to be heard prior to his re-detention. Dkt. 1 at ¶¶ 88–90.

**F.    Petitioner Yhon Rojas Portilla**

Petitioner Yhon Rojas Portilla, a citizen of Venezuela, entered the United States in September 2023 after fleeing political persecution. Dkt. 1 at ¶ 91; Dkt. 7 at ¶¶ 1–2. He was released on his own recognizance and placed in removal proceedings. *Id.*

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

After briefly residing and reporting to immigration officials in California, Petitioner settled in Washington, where he filed an asylum application, maintained family ties, and awaited his immigration hearing. Dkt. 1 at ¶¶ 92–96, 98; Dkt. 7 at ¶¶ 2, 4–7, 12. He has no criminal history. Dkt. 1 at ¶ 98; Dkt. 7 at ¶ 10.

On January 28, 2026, Petitioner reported for a scheduled appointment and was abruptly re-detained based on an alleged reporting violation without further explanation. Dkt. 1 at ¶ 99; Dkt. 7 at ¶ 9. He was then transferred to NWIPC, where he remains detained. Dkt. 1 at ¶ 100; Dkt. 7 at ¶ 11. The record reflects that Petitioner received no written notice, no individualized assessment, and no opportunity to be heard prior to his re-detention. Dkt. 1 at ¶¶ 101–103.

**G.      Petitioner Roosevelt Tebid**

Petitioner Roosevelt Tebid, a citizen of Cameroon, entered the United States in October 2024 after fleeing alleged violence and death threats. Dkt. 1 at ¶ 104; Dkt. 8 at ¶¶ 1–2. He was detained, passed a credible fear interview, and released on humanitarian parole. Dkt. 1 at ¶ 104; Dkt. 8 at ¶ 2, 8.

Petitioner later resided in Ohio and Oregon, where he filed an asylum application, obtained work authorization, and maintained community ties. Dkt. 1 at ¶¶ 105, 107–108, 112; Dkt. 8 at ¶¶ 3, 6, 8–9, 14. He has no criminal history. Dkt. 1 at ¶ 112; Dkt. 8 at ¶ 13.

In November 2025, ICE officers abruptly arrested Petitioner at his residence. Dkt. 1 at ¶ 113; Dkt. 8 at ¶ 10. He was transferred to NWIPC, where he remains detained. Dkt. 1 at ¶ 114; Dkt. 8 at ¶ 11. The record reflects that Petitioner received no written notice, no individualized assessment, and no opportunity to be heard prior to his re-detention. Dkt. 1 at ¶¶ 115–117.

**II.      PROCEDURAL BACKGROUND**

Petitioners filed the instant Petition pursuant to 28 U.S.C. § 2241 on March 13, 2026. Dkt. 1. Therein Petitioners contend the manner in which they were re-detained violated due

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

process. *Id.* On March 30, 2026, Respondents filed a Return arguing that Petitioners' re-detention comports with due process. Dkt. 13. Petitioners filed a Traverse on April 6, 2026. Dkt. 14. Thus, this matter is ripe for consideration by the Court.

Having reviewed the parties' arguments, the factual record, and the relevant legal authority, the Court concludes that Petitioners did not receive constitutionally adequate process and are entitled to some, but not all, of the relief requested in the Petition.

**III.     LEGAL STANDARDS**

**A.     Habeas Petitions**

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

**B.     Due Process**

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

### IV.    DISCUSSION

Petitioners argue that the manner in which they were re-detained violated their procedural due process rights under the test put forth in *Mathews* and in accordance with a high volume of cases addressing similar re-detention decisions in this District. *See* Dkt. 1 at 1–3.[3] Petitioners submit specific, individualized evidence demonstrating their private interests at stake (the first *Mathews* factor) and the risk of erroneous deprivations (the second *Mathews* factor) caused by their re-detention without prior notice, hearing, or individualized review by immigration officials. *See* Dkts. 2–8 (Petitioners' Declarations).

---

[3] Citing *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–24 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136–38 (W.D. Wash. 2025); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1201–03 (W.D. Wash. 2025); *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *2–4 (W.D. Wash. Sept. 17, 2025); *Y.M.M. v. Wamsley*, No. 2:25-CV-02075-TMC, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *4 (W.D. Wash. Nov. 26, 2025); *Francois v. Wamsley*, No. 2:25-cv-02122-RSM-GJL, 2025 WL 3496557, at *4 (W.D. Wash. Dec. 5, 2025); *Tomas Manuel v. Hermosillo*, No. C25-2353-TL-MLP, 2025 WL 3690778, at *3 (W.D. Wash. Dec. 10, 2025), *report and recommendation adopted*, No. C25-2353-TL-MLP, 2025 WL 3697277 (W.D. Wash. Dec. 19, 2025); *Cabrera Perez v. Hermosillo*, No. 2:25-cv-02542-RSM, 2026 WL 100735, at *6 (W.D. Wash. Jan. 14, 2026); *Tsyamba v. Hermosillo*, No. 2:25-CV-02623-GJL, 2026 WL 237514, at *4–7 (W.D. Wash. Jan. 29, 2026); *Shinwari v. Hermosillo*, No. 2:26-CV-00009-RAJ, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026); *Sarwari v. Wamsley*, No. 2:26-cv-00121-TL, 2026 WL 279968, at *3–6 (W.D. Wash. Feb. 3, 2026); *Arroyo Silva v. Hermosillo*, No. 2:26-cv-00179-GJL, 2026 WL 445003, at *5 (W.D. Wash. Feb. 17, 2026); *Arrioja Blanco v. Hermosillo*, No. C26-493-MLP, 2026 WL 548056, at *3–4 (W.D. Wash. Feb. 27, 2026); *Ortiz v. Hermosillo*, No. 2:26-cv-00384-TL, 2026 WL 607672, at *5 (W.D. Wash. Mar. 4, 2026); *Espinoza Palacios v. Hermosillo*, No. 2:26-cv-491-JNW, 2026 WL 686138, at *7 (W.D. Wash. Mar. 11, 2026); *Caisa Telenchana*, 2026 WL 696806, at *10–12.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

Respondents contend that due process was not violated with respect to any Petitioner in this case, arguing the procedural protections demanded as a matter of constitutional law are "flexible" and shift as the "particular situation demands." Dkt. 13 at 10 (quoting *Mathews*, 424 U.S. at 334). Respondents, however, fail to follow this argument with any individualized analysis of the facts and circumstances presented in this case.[4] They make no viable factual or evidentiary submissions and do not meaningfully engage with the *Mathews* factors with respect to any Petitioner. Indeed, Respondents do not even assert the government's interest in re-detention decisions they defend in this case (*i.e.*, the third factor considered under *Mathews*).

Thus, based on the record before it, the Court's application of *Mathews* to case at bar is straightforward.

**A.    Petitioners Established Strong Liberty Interests While Living in the United States**

On the first factor, the Court examines the private interest at stake. As the relevant interest here, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (interests in not being detained are "the most elemental of liberty interests"); *see also Zadvydas*, 533 U.S. at 696 (a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention).

This remains the case even when an individual is subject to conditions of parole or release. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme

---

[4] At most, Respondents state that "[a]s set forth in the accompanying declarations, most Petitioners violated the terms of their release." Dkt. 13 at 11. However, as explained in Sect. I above, Respondents do not submit these declarations to the Court "as exhibits." *Id.* at 3 n.4. Moreover, the Court cannot confirm that Respondents' counsel, through the exercise of reasonable diligence, verified whether the factual representations therein are accurate and adequately supported by evidence. *Id.* at 3 n. 3. As such, the referenced declarations and unverified factual matters discussed therein, will not be considered by the Court.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.") (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued liberty)). Where, as here, a noncitizen "has lived with relative freedom in the United States for years, the Constitution does not countenance fictional erasure of her actual presence in this country—or her concomitant due process rights." *Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (cleaned up).

Following their initial release from detention, Petitioners in this case acquired significant liberty interests entitled to the protections of the Due Process Clause. In reasonable reliance on these liberty interests, Petitioners variously obtained work permits and employment to support themselves and their families, joined religious institutions aligned with their individual faiths, learned English, built connections within their communities, and applied for asylum in the United States. Accordingly, the first *Mathews* factor weighs strongly in favor of Petitioners Barraza Laguna, Canalp, Dauzhanok, Garza Gomez, Gomez Gonzalez, Rojas Portilla, and Tebid.

**B.      The Risk of Erroneous Deprivation of Liberty is High**

With respect to the second *Mathews* factor, the risk of erroneous deprivation is significant where the government fails to follow the applicable statutory and regulatory framework. *Torres*, 2026 WL 145715, at *7 (collecting cases).

Here, Petitioners Barraza Laguna, Canalp, Dauzhanok, Garza Gomez, Gomez Gonzalez, and Rojas Portilla were released on ORECs and are subject to the discretionary detention scheme under 8 U.S.C. § 1226(a). As the Ninth Circuit has found, § 1226(a) and its implementing regulations confer "extensive procedural protections…including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202 (citing § 1226(a)(1)–(2); 8 C.F.R §§ 236.1, 1003.19(b)).

The allegations and evidence submitted by Petitioners demonstrate that the required procedural protections were not provided to those released on ORECs—there was no individualized review, no neutral decisionmaker, no meaningful notice, and no meaningful opportunity to contest ICE's assertions regarding the reasons for their re-detention—thus the risk of erroneous deprivation faced by Petitioners released on ORECs was significant. Dkt. 1 at ¶¶ 39–41, 53–55, 65–67, 78–80, 88–90, 101–03; Dkts. 2–7.

With respect to Petitioner Tebid, who was released on humanitarian parole and thus arguably subject to § 1225's mandatory detention scheme, Respondents were still required to comply with their own procedures for revoking his humanitarian parole. Here, Respondents concede the Court is "likely" to follow the same reasoning applied in *Caisa Telenchana*. Dkt. 13 at 10–12.

In that case, the Court outlined the statutory and regularity procedural protections owed to individuals, like Petitioner Tebid, who are released on humanitarian parole. "For example, unless automatically terminated by expiration or the noncitizen's departure from the United States, a noncitizen is entitled to written notice that their humanitarian parole is being revoked." *Caisa Telenchana,* 2026 WL 696806, at *11 (citing 8 C.F.R. § 212.5(e)(1)). "Additionally, for noncitizens entitled to notice, termination of humanitarian parole requires the 'accomplishment of the purpose for which parole was authorized' or for an authorized DHS official to decide that 'neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States.'" *Id.* (quoting 8 C.F.R. § 212.5(e)(2)(i)).

Here, again, the record suggests the applicable statutory and regulatory requirements were not followed. Petitioner Tebid alleges he received no notice or individual assessment by

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

immigration officials prior to his re-detention. Dkt. 1 at ¶¶ 115–17; Dkt. 8. Respondents do not submit any evidence to demonstrate the required procedures were followed. Moreover, as noted in *Caisa Telenchana*, by nature of his initial release on humanitarian parole, Petitioner Tebid was found to not be a flight risk or danger to the community, and "[w]hile circumstances may have changed, Respondents' failure to follow their own regulations created an undue risk of erroneous deprivation." *Id.* at *12 (citing 8 C.F.R. § 212.5(b); *Doe*, 787 F. Supp. 3d at 1094).

Thus, the second *Mathews* factor weighs in favor of Petitioners Barraza Laguna, Canalp, Dauzhanok, Garza Gomez, Gomez Gonzalez, Rojas Portilla, and Tebid.

**C.    The Government's Interest in Re-Detention Without Minimal Process is Low**

Finally, as noted with respect to the third *Mathews* factor, Respondents assert no governmental interest in their briefing. Nevertheless, the Court acknowledges there are strong governmental interests in the efficient administration of immigration laws, including those regarding detention of noncitizens. In pursuing those interests, however, the government is required to follow its own regulations. *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025) ("[T]he government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." (cleaned up)). As explained with respect to the second *Mathews* factor, that did not occur in this case. Accordingly, the third *Mathews* factor also favors the Petitioners in this case.

Because all three *Mathews* factors weigh in favor of Petitioners Barraza Laguna, Canalp, Dauzhanok, Garza Gomez, Gomez Gonzalez, Rojas Portilla, and Tebid, the Court finds that Respondents violated their procedural due process rights when they re-detained them without meaningful notice and opportunity to be heard. The Court therefore concludes that all seven Petitioners were, and continue to be, unlawfully detained.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13

**V.    REMEDY**

Having determined that Petitioners were subject to re-detention without the constitutionally required due process, the Court now determines the appropriate remedy for their unlawful confinement. Petitioners request their immediate release from confinement at NWIPC and permanent injunctive relief prohibiting their re-detention without specific procedural protections. Dkt. 1 at 31–32. Respondents argue that Petitioners are not entitled to habeas relief but, should the Court disagree with their position, it should consider alternative forms of habeas relief such as prompt, post-deprivation bond hearings. Dkt. 13 at 11.

As discussed below, the Court concludes that an order of immediate release is an appropriate remedy for all Petitioners in this case. Additionally, the Court grants, in part, Petitioners' request for injunctive relief but declines to impose a one-size-fits-all procedural framework for any future re-detention decision that the Petitioners may separately face.

**A.    Release from Detention**

As noted, "the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)). After issuing a conditional writ, a district court retains jurisdiction to ensure compliance with the writ and may order unconditional release if the government fails to comply with the initial habeas order. *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020).

This Court and others in this District have ordered conditional release requiring prompt, post-deprivation bond hearings where, for example, the record showed that ICE officials

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 14

performed some individualized assessment of flight risk, dangerousness, or noncompliance with release conditions before re-detaining a petitioner. *See, e.g.*, *Caisa Telenchana,* 2026 WL 696806, at \*13 (ordering conditional release where the government submitted specific evidence showing that immigration officials performed an individualized review and determined a petitioner posed a risk of danger to the community before re-detaining him, but ordering immediate release of petitioners for whom no such evidence was submitted); *Singh v. Noem*, No. 2:26-cv-00246-BAT, 2026 WL 592265, at \*3 (W.D. Wash. Mar. 3, 2026) (ordering conditional release where "Respondents claim to have detained Petitioner due to several violations of the OREC and Petitioner fails to rebut that asserted justification"); *Balwan*, 2026 WL 497098, at \*5 (similar); *see also Musaev v. Hermosillo*, No. 2:26-CV-00522-RAJ, 2026 WL 925611, at \*8 (W.D. Wash. Apr. 6, 2026) (ordering immediate release where, despite some individualized review by immigration officials, there was no allegation or evidence showing the government's re-detention decision was premised on such review).

Respondents provide no competent evidence or factual submission demonstrating immigration officials performed individualized review prior to the re-detention of any Petitioner in this case or that their re-detention decisions were based on such review. Thus, given the constitutional defects underlying their re-detention without any meaningful individualized review performed by Respondents, the Court concludes that an order of immediate release is the appropriate remedy for all Petitioners in this case.

**B.    Injunctive Relief**

Habeas corpus relief is "at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). The equitable roots of habeas corpus are embodied by "the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, [shall] 'dispose of the matter as law and justice require.'" *Fay*, 372 U.S. at 492 (quoting 28 U.S.C. § 2243). A

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 15

habeas court is thus authorized to "fashion appropriate relief other than immediate release," *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973), in order to ensure an effective remedy for unlawful detention. *Cf. Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) ("Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

These equitable principles authorize courts not only to remedy unlawful detention through release, but also to craft forward-looking relief necessary to prevent recurrence of the constitutional violation. Where a petitioner demonstrates a cognizable danger of repeated unlawful detention, permanent injunctive relief falls within the breadth and flexibility inherent in habeas equitable powers. *See Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) ("The necessary determination [for granting a permanent injunction] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.") (quotations omitted).

In this case, Petitioners allege, and the record supports, a clear pattern of re-detention without sufficient process by Respondents, demonstrating that Petitioners face a continuing threat of similar harm throughout their removal proceedings. *See* Dkt. 1; Dkts. 2–8. As set forth above, Respondents have abruptly re-detained Petitioners following their release into the community without adequate notice, without affording a hearing or performing individualized assessments, and—in some instances—without following federal regulations governing Respondents' own claimed authority to detain. This pattern demonstrates a continuing risk of constitutional harm, the recurrence of which is not speculative.

At the same time, the current record does not demonstrate that a specific procedural framework will clearly govern all prospective re-detention decisions for every Petitioner in this

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 16

case. That is, given the varying circumstances that may warrant the Petitioners' future re-detention, determining what specific process will be owed to Petitioners, in all circumstances, is not possible on the current record.

Thus, at this juncture, the Court finds it sufficient to prohibit Respondents from re-detaining Petitioners without adequate notice and opportunity to be heard. The Court will not, however, craft a comprehensive procedural scheme governing all conceivable re-detention decisions each of the Petitioners may variably face.

Accordingly, Petitioners' request for injunctive relief is **GRANTED IN PART** as set forth in the conclusion below.

## VI.   CONCLUSION

For the foregoing reasons, Petitioners' habeas Petition (Dkt. 1) is **GRANTED IN PART**, and the Court **ORDERS** the following

(1)    Respondents **SHALL release** Petitioners Luis Barraza Laguna, Sefik Canalp, Yauheni Dauzhanok, Maria Garza Gomez, Jesus Gomez Gonzalez, Yhon Rojas Portilla, and Roosevelt Tebid from custody immediately under conditions consistent with those in place at the time of their re-detention;

(2)    Respondents **SHALL** file a certification within **24 HOURS** of the issuance of this Order, confirming that Petitioners have been released from custody and providing the date and time of their release;

(3)    Respondents **SHALL** return to Petitioners, immediately upon their release, any personal property, including personal identification documents (other than a passport) and employment authorization documents; and

(4)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them **SHALL NOT re-detain** Petitioners unless an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate, or until Petitioners are issued a final order of removal.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 17

Finally, the Court will entertain post-judgment requests for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 9th day of April, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 18